# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:19-cr-00077-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FRANCISCO ESCAMILLA VILLA, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion to Suppress [Doc. 11]. The Court held an evidentiary hearing on the Defendant's motion on November 8, 2019. The parties filed supplemental briefs on November 22 and November 27, 2019, respectively. [Docs. 29, 31].

## I. BACKGROUND

### A. The Defendant's Arrest

Unless otherwise noted, the following is a summary of the factual findings made by the Magistrate Judge in his Memorandum and Recommendation following the suppression hearing held in Criminal Case No. 1:18-cr-00086-MR-WCM. In adopting the Magistrate Judge's

Memorandum and Recommendation, this Court adopted these factual findings as a whole. As conceded by the Defendant [see Doc. 12 at 1], the parties are now precluded from relitigating these factual issues.

In the spring or early summer of 2017, law enforcement began investigating the Defendant for suspected trafficking and distribution of methamphetamine. As of a year later, no arrest had been made and no search warrant had been requested for the Defendant's residence.

On June 7, 2018, deputies from the Macon County Sheriff's Office observed the Defendant leaving his residence in a vehicle. Shortly thereafter, the deputies conducted a lawful traffic stop of the Defendant for speeding, driving left of center, and driving without a valid driver's license. [Criminal Case No. 1:18-cr-00086-MR-WCM, Doc. 44: Memorandum and Recommendation at 3, 20]. A deputy smelled marijuana as he approached the driver's side window. [Id. at 6]. The Defendant admitted that he did not have a North Carolina driver's license because of his immigration status, but instead produced Mexican identification documents or an international driver's license.[1] [Id. at 6; Id., Doc. 34: Transcript at 66, 113]. The Defendant admitted that he had recently "hit the marijuana pipe," and the deputy seized

---

[1] The Defendant also told one of the officers that he had been in the United States since he was 17 years old. [Id., Doc. 34 at 114].

a marijuana vape pen from the Defendant following a lawful, consensual search of his person. [Id. at 7, 24-25]. The Defendant asked a deputy if he was in trouble for the marijuana they found, and, at that time, the deputy responded that the Defendant was not under arrest for it. [Id. at 8].

The conversation continued, during which the Defendant offered to allow the deputies to search his home to prove that there were no drugs there. [Id. at 9-10]. The deputies traveled with the Defendant to his home located about a mile away from the site of the vehicle stop and searched it after obtaining written consent. [Id. at 10-13]. The officers found and seized additional marijuana vape pens and several firearms. [Id. at 13].

Following the search of his home, the deputies arrested the Defendant and charged him with state drug law violations for the drug paraphernalia and marijuana seized from both his person and his home. [Id.]. The Defendant was transported to the Macon County Detention Center, where he was fingerprinted as part of the routine booking process. [See Doc. 24-1; Doc. 28 at 44, 46-47, 69].[2]

---

[2] The discussion that follows relates to evidence regarding the Defendant's booking and interrogation at the Macon County Detention Center. This evidence was not introduced as part of the original suppression hearing but rather was introduced at the evidentiary hearing on November 8, 2019.

Detective Josh Stewart contacted Department of Homeland Security Special Agent Klarisa Zaffark ("SA Zaffark") to investigate the Defendant's immigration status. [Doc. 28 at 49]. Detective Stewart told SA Zaffark that "he had an individual in custody who had stated he was not a citizen of the United States." [Id. at 87]. Detective Stewart placed the Defendant on the speakerphone at the Macon County Detention Center so that SA Zaffark, who is a fluent Spanish speaker, could ask the Defendant about his immigration status. [Id.].

SA Zaffark did not advise the Defendant of his Miranda rights. [Id. at 86, 87, 88]. SA Zaffark asked the Defendant where he was born, and he told her that he was born in Mexico. [Id. at 73]. SA Zaffark asked the Defendant if he was a United States citizen, and he said that he was not and that he did not have any legal immigration status. [Id.]. SA Zaffark asked the Defendant if he had ever come in contact with an immigration officer, and he stated that he had. [Id. at 89]. SA Zaffark then lodged an Immigration Detainer with respect to the Defendant. [Id. at 90; see also Def. Ex. 5: Immigration Detainer].

**B.     The Defendant is Charged in Federal Court**

On June 8, 2018, the Defendant was charged in a Criminal Complaint in this Court with possession of a firearm by an illegal alien, in violation of 18

4

U.S.C. § 922(g)(5), and the petty offense of illegal entry, in violation of 8 U.S.C. § 1325(a). [Case No. 1:18-mj-00067-DLH, Doc. 1: Complaint]. That same day, the Defendant was arrested and made an initial appearance. At that time, the Defendant was processed by the United States Marshals for booking, and his fingerprints were taken. On June 13, 2018, preliminary and detention hearings were conducted. Probable cause was found, and Defendant waived his right to a detention hearing.

On June 20, 2018, the Grand Jury returned a one-count Bill of Indictment charging the Defendant only with the firearms violation under 18 U.S.C. § 922(g)(5). [Criminal Case No. 1:18-cr-00086-MR-WCM, Doc. 9]. The Defendant pled not guilty to this charge during an arraignment on June 25, 2018.

On August 16, 2018, the Defendant filed a Motion to Suppress, challenging the legality of both the June 7, 2018 traffic stop and the subsequent search of his residence. [Id., Doc. 16]. On December 4, 2018, the Honorable W. Carleton Metcalf, United States Magistrate Judge, conducted an evidentiary hearing on the Defendant's Motion.

On June 10, 2019, Magistrate Judge Metcalf issued a Memorandum and Recommendation, recommending that the Defendant's Motion to Suppress be granted in part and denied in part. [Id., Doc. 44]. Specifically,

5

the Magistrate Judge recommended granting the motion with respect to the evidence taken from the Defendant's residence on the grounds that the Defendant's consent to search was not voluntarily given. [Id.]. The Magistrate Judge recommended denying the suppression motion with respect to the other evidence seized during the traffic stop, including the Defendant's statements and the marijuana vape pen. [Id.]. Both the Government and the Defendant filed objections to the Memorandum and Recommendation. [Id., Docs. 47, 48]. This Court accepted the Memorandum and Recommendation in its entirety on July 12, 2019. [Id., Doc. 49].

On August 6, 2019, the Grand Jury returned a second Bill of Indictment against the Defendant in Case No. 1:19-cr-00077-MR-WCM, this time charging him with illegal reentry into the United States following deportation or removal and subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). [Doc. 1].

On August 19, 2019, the Government moved to dismiss the Bill of Indictment in Case No. 1:18-cr-00086-MR-WCM without prejudice. [Case No. 1:18-cr-00086-MR-WCM, Doc. 50]. The Court granted the Government's Motion on August 21, 2019. [Id., Doc. 51].

The Defendant was arraigned in Case No. 1:19-cr-00077-MR-WCM on August 21, 2019. On September 20, 2019, the Defendant filed the present Motion to Suppress, seeking the suppression of the fingerprints and attendant criminal and immigration record evidence obtained by law enforcement as a result of his arrest. [Doc. 11]. The Government responded to the Defendant's motion [Doc. 18], and the Defendant filed a reply thereto [Doc. 21]. On November 1, 2019, the Defendant filed a Notice of Supplemental Evidence, for the first time requesting an evidentiary hearing on the suppression motion. [Doc. 24]. The Court continued the case to its present trial setting of January 6, 2020 and scheduled an evidentiary hearing on the Defendant's suppression motion for November 8, 2019. [Doc. 26]. Following the evidentiary hearing, the Court gave the parties the opportunity to file supplemental briefs regarding the suppression issue. The Government filed its supplemental brief on November 22, 2019. [Doc. 29]. The Defendant filed a supplemental brief in support of the suppression motion on November 27, 2019 [Doc. 31], and a response to the Government's supplemental brief on December 11, 2019 [Doc. 34]. [Doc. 31]. Having been heard and fully briefed, the Defendant's suppression motion is ripe for disposition.

## III. DISCUSSION

### A. Fingerprint, Criminal, and Immigration Records

The Defendant seeks suppression of all fingerprint, criminal, and immigration records on the grounds that such evidence was obtained in violation of his Fourth Amendment rights.

The Fourth Amendment to the United States Constitution protects persons "against unreasonable searches and seizures." U.S. CONST. amend. IV. The usual remedy for a violation of the Fourth Amendment is the suppression of any evidence obtained during the illegal police conduct. See Mapp v. Ohio, 367 U.S. 643, 648 (1961). A defendant may also seek the suppression of any evidence that is deemed to be the "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 488 (1963). Ultimately, "the critical inquiry is whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." United States v. Oscar-Torres, 507 F.3d 224, 227 (4th Cir. 2007) (citation and internal quotation marks omitted).

On two occasions, the Supreme Court has held that suppression of fingerprint evidence is required where such evidence was obtained by "exploitation" of initial illegal activity by law enforcement. See Hayes v.

Florida, 470 U.S. 811, 816 (1985); Davis v. Mississippi, 394 U.S. 721, 727 (1969). In both Hayes and Davis, police officers – acting without either a warrant or probable cause – detained and fingerprinted a person suspected of committing a certain crime. The Supreme Court reversed both convictions, holding that "transportation to and investigative detention at the station house without probable cause or judicial authorization together violate the Fourth Amendment." Hayes, 470 U.S. at 815; Davis, 394 U.S. at 727 ("Detentions for the sole purpose of obtaining fingerprints are no less subject to the constraints of the Fourth Amendment.").

Construing Hayes and Davis in the context of § 1326 offenses, the Fourth Circuit has held that: "When police officers use an illegal arrest as an investigatory device in a criminal case 'for the purpose of obtaining fingerprints without a warrant or probable cause,' then the fingerprints are inadmissible under the exclusionary rule as 'fruit of the illegal detention.'" Oscar-Torres, 507 F.3d at 230-31 (quoting United States v. Olivares-Rangel, 458 F.3d 1104, 1114-16 (10th Cir. 2006)). However, when fingerprints are "'administratively taken . . . for the purpose of simply ascertaining . . . the identity' or immigration status of the person arrested, they are 'sufficiently unrelated to the unlawful arrest that they are not suppressible.'" Oscar-Torres, 507 F.3d at 231 (quoting Olivares–Rangel, 458 F.3d at 1112-13].

Therefore, the Fourth Circuit has held that "fingerprints do not constitute suppressible fruit of an unlawful arrest or detention unless the unlawful arrest 'was purposefully exploited in order to develop critical evidence of criminal conduct to be used against the defendant' in a criminal proceeding." Oscar-Torres, 507 F.3d at 231 (quoting Olivares-Rangel, 458 F.3d at 1113).

Relying upon Oscar-Torres, the Defendant argues that "of course [the officers] obtained these [fingerprint and immigration and criminal] records for the purpose of investigating potential criminal offenses – there could be no other purpose for obtaining them." [Doc. 12 at 9]. In support of this argument, the Defendant submits evidence, recently produced in discovery, of the state fingerprint cards taken on the night of the Defendant's arrest, as well as the Department of Homeland Security (DHS) Immigration Detainer – Notice of Action ("Detainer"), that was filed with the Macon County Sheriff's Office. [See Doc. 24-1]. This Detainer indicates a finding of probable cause, based on statements made by the Defendant, that he is a removable alien. [Id.]. The Detainer further states that: "Upon completion of the proceeding of investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination." Id. The Defendant argues that this evidence establishes that law enforcement officers intended or expected that the

Defendant's arrest would lead to a criminal prosecution as well as a deportation proceeding. [Doc. 24 at 1-2].

Contrary to the Defendant's argument, however, there is nothing in the record to suggest that the fingerprinting of the Defendant was motivated by any planned criminal prosecution or for any reason other than the normal, administrative booking process. The arresting deputies had probable cause to arrest and charge the Defendant with state drug law violations, and they booked him on those charges. The following day, this Court issued a criminal complaint and arrest warrant against the Defendant for illegal entry and firearms offenses, and the United States Marshals took his fingerprints subsequent to that arrest as part of the routine booking procedure. There is no indication in the record that these fingerprints were taken for investigative purposes, such as to compare them to unidentified prints taken from a crime scene, as was the case in Davis and Hayes.

The Fourth Circuit has made clear that "fingerprints and records are not automatically suppressible simply because they would not have been obtained *but for* illegal police activity. Rather, this evidence is suppressible only if obtained by '*exploitation*' of the initial police illegality." Oscar-Torres, 507 F.3d at 230 (citing Wong Sun, 371 U.S. at 488) (emphasis in original). The Hayes and Davis cases illustrate situations in which the police engaged

in illegal activity in order to exploit fingerprint evidence. "[I]n both cases [Hayes and Davis] the police acted with a clear investigative purpose—to tie the fingerprinted suspect to that crime." Oscar-Torres, 507 F.3d at 230; Olivares-Rangel, 458 F.3d at 1114 ("However, both cases [Hayes and Davis] arose from illegal arrests made *for the purpose of obtaining fingerprints*." (emphasis in original)). Here, there is nothing to indicate that the Defendant's arrest was made for the purpose of obtaining his fingerprints, or that his arrest "was purposefully exploited in order to develop critical evidence of criminal conduct to be used against [him] in a criminal proceeding." Oscar-Torres, 507 F.3d at 231 (quoting Olivares-Rangel, 458 F.3d at 1113).

While the Court ultimately suppressed the fruits of the *search* of his residence due to the lack of the Defendant's voluntary consent, the illegality of that search does not require the suppression of the Defendant's fingerprints or the evidence of his criminal and immigration records here. There is no indication in the record that the Defendant was subjected to an illegal detention for the investigatory purpose of obtaining such information. The Defendant's motion to suppress the fingerprint, criminal, and immigration records obtained as a result of his arrest is therefore denied.

### B. Defendant's Statements to SA Zaffark

In his Supplemental Brief filed on November 27, 2019, the Defendant raises for the first time the argument that the officers' interrogation of him at the Macon County Detention Center on the night of his arrest violated his Fifth Amendment right against self-incrimination.

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law…." U.S. Const. amend. V. In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Supreme Court recognized that custodial interrogation by the police is inherently coercive, and consequently held that detailed warnings were required to protect the privilege against compulsory self-incrimination. It is well-settled that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" Id. at 460 (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)).

The test for determining whether an individual is "in custody" for Miranda purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." See Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (citation and internal quotation marks omitted).

Here, the Defendant had been placed under arrest for state drug charges when SA Zaffark interrogated him at the Macon County Jail about his immigration status. [Doc. 28 at 49, 55, 59, 89]. SA Zaffark was fluent in Spanish and questioned the Defendant extensively about his immigration status. [See id. at 59, 86-87, 89]. SA Zaffark did not write a report of the interrogation but admitted at the evidentiary hearing that she did not advise the Defendant of his Miranda rights. [Id. at 88]. SA Zaffark's interrogation without advisement of Miranda rights violated the Defendant's Fifth Amendment rights. Thus, the incriminating statements obtained during SA Zaffark's interrogation must be suppressed. The suppression of such statements, however, has no effect on the admissibility of the statements made by the Defendant during the traffic stop regarding his immigration status, as the Court has already concluded that such statements were not obtained in violation of the Defendant's Fifth Amendment rights. [See Doc. 44 at 29 (recommending denial of motion to suppress regarding statements

14

made during traffic stop); Doc. 49 (accepting Memorandum and Recommendation)]. Further, the suppression of the Defendant's statements to SA Zaffark has no effect on the admissibility of the criminal and immigration records obtained as a result of checking the Defendant's fingerprints.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Suppress [Doc. 11] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is **GRANTED** with respect to the Defendant's statements to SA Zaffark during the June 7, 2018 interrogation. In all other respects, the Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

Signed: December 20, 2019

Martin Reidinger
United States District Judge