# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CRIMINAL CASE NO. 1:19-cr-00077-MR-WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| FRANCISCO ESCAMILLA VILLA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss Indictment for Violations of His Fifth and Sixth Amendment Rights to a Speedy Trial [Doc. 9] and the Defendant's Motion to Dismiss Based on Due Process Violations [Doc. 13]. The Court held an evidentiary hearing on the Defendant's Motions on November 8, 2019.

## I. PROCEDURAL BACKGROUND

On June 7, 2018, the Defendant was arrested by Macon County Sheriff's deputies on state charges of possession of drug paraphernalia and possession of marijuana. On June 8, 2018, the Defendant was charged in a federal criminal complaint with possession of firearms by an alien who is unlawfully within the United States, in violation of 18 U.S.C. § 922(g)(5), and

illegal entry, in violation of 8 U.S.C. § 1325(a). [See Case No. 1:18-mj-00067-DLH, Doc. 1: Complaint]. On June 20, 2018, the Defendant was charged in a Bill of Indictment with the § 922(g)(5) violation. [See Criminal Case No. 1:18-cr-00086-MR-WCM, Doc. 9: Indictment]. On June 20, 2018, the criminal complaint against the Defendant was terminated, and Case No. 1:18-mj-00067-WCM was closed.[1]

On August 16, 2018, the Defendant filed a Motion to Suppress, challenging the legality of both the traffic stop and the subsequent search of his residence that occurred on June 7, 2018. [Id., Doc. 16]. The Government filed a Response in opposition on September 11, 2018. [Id., Doc. 24].

The Magistrate Judge held an evidentiary hearing on the Defendant's Motion to Suppress on December 4, 2018. While the matter was under advisement with the Magistrate Judge, the Defendant filed a series of motions to continue the trial, resulting in a trial setting of June 25, 2019. [Id., Docs. 41, 42]. On June 7, 2019, the Defendant filed a "Notice of Defendant's Assertion of Speedy Trial Rights and Request for Resolution of Suppression Motion." [Id., Doc. 43].

---

[1] Per this District's usual practice, the Criminal Complaint was docketed as the first entry in Criminal Case No. 1:18-cr-00086-MR-WCM, even though the Bill of Indictment [Doc. 9] had become the operative charging document.

On June 10, 2019, the Magistrate Judge filed his Memorandum and Recommendation concerning the suppression motion, making findings granting the motion in part with respect to evidence recovered from Defendant's residence and otherwise denying the motion to suppress. [Id., Doc. 44]. On June 17, 2019, the Government filed a motion to continue the trial for the ends of justice, but the Defendant did not join the motion or consent to another continuance. [Id., Doc. 45]. The Court granted the motion on June 18, 2019. [Id., Doc. 46].

On June 24, 2019, both parties filed objections to the Memorandum and Recommendation. [Id., Docs. 47, 48]. On July 12, 2019, the District Court overruled the parties' objections and adopted the Memorandum and Recommendation in whole. [Id., Doc. 49].

On August 6, 2019, Defendant was charged in a Bill of Indictment in a separate case with being an alien in the United States illegally and after having been removed and subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2) ("aggravated reentry"). [See Doc. 1]. On August 21, 2019, the Government moved to dismiss the Bill of Indictment in Criminal Case No. 1:18-cr-00086-MR-WCM. [See Criminal Case No. 1:18-cr-00086-MR-WCM, Doc. 50]. The Court granted

the Government's Motion and dismissed the case without prejudice.  [Id.,
Doc. 51].

The Defendant now moves to dismiss the Bill of Indictment in the
present action for violations of his Fifth and Sixth Amendment rights to a
speedy trial [Doc. 9] and for violation of his due process rights under the Fifth
and Fourteenth Amendments to the United States Constitution resulting from
the Government's alleged vindictive prosecution [Doc. 13].  The Government
responded to both motions [Docs. 16, 17], and the Defendant filed replies
[Docs. 19, 20].  The Court held an evidentiary hearing on these motions on
November 8, 2019.  Following the hearing, the parties were allowed the
opportunity to file supplemental briefs.  The parties filed their supplemental
briefs on November 27 and December 11, 2019, respectively.  [Docs. 30, 32,
35, 36].  These matters are now ripe for disposition.

## II.    FACTUAL BACKGROUND

On June 7, 2018, Macon County Sheriff's Office deputies conducted a
surveillance operation focusing on the Defendant as the subject of an
ongoing narcotics investigation.  [See Criminal Case No. 1:18-cr-00086-MR-
WCM, Doc. 44 at 3, 20]. The officers' interactions with the Defendant that
day led to his state arrest, initially on misdemeanor drug charges. [Id. at 13].
During the initial traffic stop of the Defendant, he presented documents

indicating that he was a Mexican citizen and told the officers that he was not a licensed North Carolina driver because of his immigration status.  [See id., Doc. 34 at 66, 113].  The Defendant also told the officers that he had been in the United States since he was 17 years old.  [Id. at 114].  The Defendant was brought to the Macon County Detention Center on the state charges, processed for booking, fingerprinted by the county, and held overnight.  That same evening, Department of Homeland Security Special Agent Klarisa Zaffark (SA Zaffark) interrogated the Defendant about his immigration status via telephone.  Defendant told SA Zaffark that he had entered the United States illegally, but he did not disclose that he had been previously removed by immigration officials and had thus illegally reentered at some point.

The next day, Detective Josh Stewart with the Macon County Sheriff's Office obtained a federal criminal complaint against the Defendant, alleging the previously described firearms and illegal entry charge. On June 8, 2018, Defendant made his initial federal appearance on the complaint, and a preliminary hearing and detention hearing was set for June 13, 2018. On June 12, 2018, a Pretrial Services Report was issued.  [See Case No. 1:18-mj-00067-DLH, Doc. 5].  The report contained an entry indicating an arrest of the Defendant in 2008 by Immigration and Customs Enforcement (ICE) and listed a "charge" of "Entry without Inspection" and "Alien Removal Under

Section 212 and 237." [Id. at 3]. The disposition of this entry stated: "Disposition unknown." [Id.]. Two apparent felony convictions appeared on the report as well. One offense indicated a conviction in Cherokee County, Georgia on April 15, 2008, and listed as its disposition "[f]ine, probation 3 years and 7 years confinement." [Id.]. Another offense indicated a conviction in Cobb County, Georgia on June 9, 2011, and listed as its disposition "3 years confinement." [Id.]. However, the records gathered at the initiation of the case by the case agent, Detective Stewart, did not show any prior felony convictions for the Defendant. Later, counsel for the Government learned that the reason that the prior convictions were not located by Detective Stewart was because the records pertaining to the Defendant's prior convictions are listed under the names "William Escamilla Villa" (Cherokee County, Georgia) and "Willian [sic] Villa Escamilla" (Cobb County, Georgia). Thus, the case agent did not discover any immigration-related documents when he searched using the name "Francisco Escamilla Villa." Those records were later discovered to be under the name "William Villa-Escamilla," a/k/a "Willian Villa-Escamilla." The Pretrial Services Report did not indicate that Defendant went by any names besides "Francisco Escamilla Villa." In fact, no case agent reports or discovery records indicated anything about the Defendant's prior removal.

At the probable cause and detention hearing held on June 13, 2018, probable cause was found and the Defendant waived the detention hearing.

As noted above, the Grand Jury returned a Bill of Indictment against the Defendant as to the single count of possession of firearm while being an alien illegally or unlawfully in the United States. At that time, counsel for the Government did not have any proof of a felony conviction by the Defendant or a removal of the Defendant by ICE, and Detective Stewart as the case agent was not investigating these matters. With respect to the illegal entry charge, counsel for the Government believed that he could not proceed to indictment on that offense because it was not actually a continuing offense, the offense was almost certainly completed in a state at the Mexican border, and therefore venue was lacking in the Western District of North Carolina. For these reasons, counsel for the Government decided not to indict the Defendant for illegal entry, and the case proceeded on the firearms charge alone.

In June 2019, while the suppression motion was still under advisement with the Magistrate Judge, counsel for the Government began conducting a review of the case file in anticipation of a possible trial during the June 25, 2019 trial term. In the course of doing so, counsel for the Government asked SA Zaffark to look further into methods of proving the Defendant's alien

status. SA Zaffark discovered that the Defendant's fingerprints had never been checked against existing records in ICE databases. On June 18, 2019, with a potential trial only a week away,[2] SA Zaffark received the Defendant's fingerprint cards from the United States Marshals and ran them through ICE databases for a possible match. On June 20, 2019, her search resulted in a "hit" for the first time based on a fingerprint match. The Government thus first learned on that date that the Defendant had been removed previously under the name "William Villa-Escamilla," a/k/a "Willian Villa-Escamilla." At this time, SA Zaffark was able to obtain partial immigration removal records for the Defendant.

Through the same search, on June 20, 2019, SA Zaffark located records pertaining to apparent felony convictions for the Defendant out of Georgia. SA Zaffark turned the criminal history records and partial immigration records over to the United States Attorney's Office, and such records were later produced in discovery. SA Zaffark then ordered the remaining records pertaining to the Defendant's removal, which records are known as an "A-file." The A-file documents are the original and essential

---

[2] The Order granting the Government's Motion to Continue [Criminal Case No. 1:18-cr-00086-MR-WCM, Doc. 46], was entered around 5:53 p.m. on June 18, 2019, and therefore counsel for the Government spent that day under the assumption that trial was in fact just a week away.

documents required to support a removal indictment. The A-file showed that the Defendant was removed by an immigration officer at the Hidalgo, Texas port of entry on December 20, 2011 and thus reentered sometime thereafter. The A-file was received by Homeland Security on August 2, 2019, and the Defendant was indicted on August 6, 2019 for aggravated reentry.

## III.    DISCUSSION

### A.    Motion to Dismiss for Speedy Trial Violations

The Defendant moves to dismiss the Bill of Indictment in this action on the grounds that his rights to a speedy trial under the Fifth and Sixth Amendments were violated.  [Doc. 9].  The Defendant further contends that the Court has the discretionary authority under Rule 48(b) of the Federal Rules of Criminal Procedure to dismiss the Bill of Indictment for the unnecessary delay in indicting and bringing him to trial.  [Id.].

As an initial matter, the Court notes that the Defendant also seeks dismissal of the underlying criminal complaint in his motions to dismiss.  [See Doc. 10 at 1; Doc. 14 at 1].  The record, however, reflects that the criminal complaint filed in Case No. 1:18-mj-00067-WCM was terminated upon the filing of the Bill of Indictment on June 20, 2018.  With respect to the § 922(g)(5) charge, the Bill of Indictment effectively superseded the criminal complaint and became the operative pleading document.  With respect to the

9

illegal entry charge under § 1325, the failure to include such charge in the Bill of Indictment resulted in this charge essentially being "dropped." See 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment ... is filed within the time limit required by section 3161(b) ... such charge against that individual contained in such complaint shall be dismissed *or otherwise dropped*.") (emphasis added). Thus, there is no "underlying criminal complaint" remaining to be dismissed.[3] The Court therefore will proceed to address the Defendant's motions to dismiss with respect to the Bill of Indictment only.

### 1. Sixth Amendment

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The determination of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment is made on a case-by-case basis and requires a balancing of the following factors: (1) the length of delay; (2) the reasons for the delay; (3) the timeliness and vigor of the defendant's

---

[3] This is in contrast to the situation where a superseding bill of indictment has been filed, thereby leaving the original counts of the indictment remaining to be disposed of.

assertion of the speedy trial right; and (4) the degree of prejudice which the defendant suffers. Barker v. Wingo, 407 U.S. 514, 530 (1972).

The first Barker factor, the length of delay, "serves as a 'triggering mechanism' that places a speedy trial violation on the table and requires [the Court] to balance the other factors." United States v. Black, 918 F.3d 243, 254 (2d Cir. 2019) (citing Barker, 407 U.S. at 530). While the determination of whether a delay is presumptively prejudicial depends on the particular circumstances of the case, the Supreme Court has recognized that a post-accusation delay approaching one year may be considered presumptively prejudicial. See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

Here, the Defendant argues that the year-plus delay between the filing of the criminal complaint on June 8, 2018 and the filing of the Indictment on August 6, 2019 is presumptively prejudicial. The Defendant's argument, however, presupposes that the filing of the criminal complaint is the relevant trigger for the speedy trial analysis. Here, the Defendant was charged in the criminal complaint with the petty offense of illegal entry. The aggravated reentry charge that was subsequently brought in the Bill of Indictment is a distinct offense from the charge of illegal entry. See United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996) (holding that defendants could not assert Sixth Amendment challenge to possession charge where defendants were

11

charged in criminal complaint only with conspiracy; "[n]otwithstanding the fact that proof of the possession charge relied on the same facts that supported the conspiracy charge, possession is a distinct and separate offense."). Most importantly, the Government did not even have the evidence necessary to support the charge of aggravated reentry until June 2019, when SA Zaffark ran the Defendant's fingerprint cards through ICE databases and discovered that the Defendant had been removed previously under the name "William Villa-Escamilla," a/k/a "Willian Villa-Escamilla." See United States v. Handa, 892 F.3d 95, 106-07 (1st Cir. 2018) (finding that assertion of additional charge did not reset Sixth Amendment speedy trial clock to the date of a superseding indictment where "(1) the additional charge and the charge for which the defendant was previously accused are based on the same act or transaction, or are connected with or constitute parts of the common scheme or plan previously charged, and (2) the government could have, with diligence, brought the additional charge at the time of the prior accusation").

In his supplements to the Motion to Dismiss, the Defendant argues that certain evidence recently produced by the Government in discovery – namely, the immigration detainer filed by the Department of Homeland Security (DHS) with the Macon County Sheriff's Office on June 7, 2018 –

supports a finding that the Government failed to act with reasonable diligence in prosecuting the Defendant on the aggravated reentry charge. [See Docs. 23, 30]. The immigration detainer, however, merely states that based on statements previously made by the Defendant, DHS had determined that there was probable cause to believe that the Defendant was a removable alien. This evidence does not support a finding that the Government had the information necessary at that time to charge the Defendant with the offense of aggravated reentry.

The Defendant also argues that the Pretrial Services Report prepared by United States Probation in advance of the Defendant's first initial appearance, and particularly the entry regarding an immigration charge in 2008, provided the Government with all the facts necessary to charge him with aggravated reentry as early as his initial appearance on the criminal complaint. The entry referenced by the Defendant, however, does not in any way definitively indicate a removal, stating only "[d]isposition unknown." Given the ambiguity of this entry, and the fact that the case agent had not discovered any materials relating to the Defendant's immigration status (likely because of the Defendant's use of an alias), it would not be reasonable to charge the prosecutor with definitive knowledge of the Defendant's prior removal based solely on this entry.

As the Government lacked the information necessary to prove the elements of aggravated reentry at the time of the original criminal complaint, the Government reasonably could not have brought that charge at that time. For these reasons, the Court concludes that the Defendant was not "accused" of aggravated reentry until he was charged in the Bill of Indictment in August 2019. Thus, his right to a speedy trial under the Sixth Amendment was not implicated by the delay between the filing of the original criminal complaint charging him with illegal entry and the Bill of Indictment charging him with aggravated reentry.[4]

Having determined that the Defendant's speedy trial rights were not implicated by any unnecessary pre-indictment delay, the Court need not address the other Barker factors. See Black, 918 F.3d at 254. Nevertheless, out of an abundance of caution, the Court will proceed to address each of the remaining factors.

With respect to the second Barker factor, the reasons for the delay, the Government has submitted evidence that it did not charge the Defendant with illegal reentry sooner because it did not discover the evidence against

---

[4] The Defendant does not assert any challenge to the length of delay between August 6, 2019, the date of the Indictment charging him with aggravated reentry, and the current trial date of January 6, 2020.

the Defendant that supported the reentry charge until June 20, 2019. Further, the A-file was not secured by the prosecution until August 2, 2019. The difficulty in ascertaining the Defendant's immigration status is due at least in part to the fact that the Defendant reentered using a different name from the one under which he had been removed.  As a result, Detective Stewart's search of the Defendant's criminal records did not uncover his immigration case. Further, the Defendant had told Detective Stewart during the traffic stop that he had been in the United States since he was 17 years old.  In this way, the Defendant's own misrepresentation was part of the cause of the delay.  This factor, therefore, favors the Government.

The third Barker factor, the Defendant's assertion of his speedy trial right, also favors the Government.  The Defendant did not affirmatively assert his speedy trial right in this case until September 20, 2019, upon filing of this motion to dismiss.  In his motion, the Defendant states that he has affirmatively asserted his speedy trial rights since at least June 7, 2019 when he did so in the firearms case against him.  [See Criminal Case No. 1:18-cr-00086, Doc. 43].  The Defendant, however, asserted such rights only with respect to the firearms charge pending in the Bill of Indictment.  The Defendant's Notice made no mention at that time regarding the existence of the illegal entry charge contained in the criminal complaint, and for good

reason: that charge had been dropped and was no longer pending. This factor, therefore, weighs in favor of the Government.

Finally, the Court turns to the fourth <u>Barker</u> factor, prejudice to the defendant caused by the delay. In weighing this factor, the Court must consider: "(1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." <u>United States v. Hall</u>, 551 F.3d 257, 272 (4th Cir. 2009) (citing <u>Barker</u>, 407 U.S. at 532). Here, the Defendant argues that he has suffered from oppressive pretrial incarceration and increased anxiety and concern as a result of the pretrial delay. While it is true that the Defendant has been subjected to pretrial incarceration since his arrest on June 8, 2018 in the firearms case, his continual incarceration has been due at least in part to the fact that the Defendant filed a motion to suppress, followed by five motions to continue, extending the docket call of that case to June 25, 2019, before asserting his speedy trial rights. As noted, the firearms case was dismissed and is no longer pending. The present case against the Defendant has been pending only since August 6, 2019, and thus his incarceration related to the current case has been relatively brief. Under these circumstances, the Court cannot say that the overall length of the Defendant's incarceration has been oppressive. As for the impairment of his

defense, the Defendant has not identified any specific defense matter that he has been foreclosed from offering because of any alleged delay. The Defendant has not identified any witness who is now absent, any tangible evidence that has been lost, or any motion that he has missed the opportunity to file. The Defendant has been able to fully litigate a motion to suppress challenging the legality of the fingerprint evidence and the criminal and immigration records obtained by the Government subsequent to his arrest and the search of his residence. Accordingly, the Court concludes that this fourth factor weighs in favor of the Government.

When the <u>Barker</u> factors are considered as a whole, the Court concludes that the Defendant has not shown a violation of his speedy trial rights under the Sixth Amendment. Accordingly, the Defendant's motion to dismiss the Indictment based on Sixth Amendment speedy trial violations is denied.

### 2.   Fifth Amendment

The Fifth Amendment requires dismissal of an indictment if it is shown "that the pre-indictment delay . . . caused substantial prejudice to [the defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." <u>United States v. Marion</u>, 404 U.S. 307, 324 (1971). The Court employs a two-pronged inquiry to evaluate

a defendant's claim that pre-indictment delay violated his right to due process. United States v. Uribe-Rios, 558 F.3d 347, 358 (4th Cir. 2009) (citing United States v. Automated Med. Labs., Inc., 770 F.3d 399, 403 (4th Cir. 1985)). First, the Court must consider whether the defendant has satisfied his burden of proving "actual prejudice." Uribe-Rios, 558 F.3d at 358. Second, if that threshold requirement is met, the Court should consider the reasons for the delay and balance that prejudice against the Government's reasons. Id.

Even assuming that there was actually a delay in bringing the present Indictment (which the Court concludes there was not), the Defendant fares no better under the Fifth Amendment. The Defendant has failed to show that any delay resulted in "unavailability of records, witnesses, or other evidence" such as to cause actual prejudice. See id. Accordingly, the Defendant's motion to dismiss for pre-indictment delay under the Fifth Amendment is also denied.

### 3.    Rule 48(b)

Rule 48(b) of the Federal Rules of Criminal Procedure provides that the Court "may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b). "This provision not only allows a court to dismiss an indictment on

constitutional grounds, but it also restates the court's inherent power to dismiss an indictment for lack of prosecution where the delay is not of a constitutional magnitude." <u>United States v. Goodson</u>, 204 F.3d 508, 513 (4th Cir. 2000) (internal citations omitted).

For the reasons stated herein, the Court concludes that the Defendant was not subjected to any unnecessary delay in his prosecution. Accordingly, the Defendant's motion for the Court to dismiss this action pursuant to Rule 48(b) is hereby denied.

### B. Motion to Dismiss for Vindictive Prosecution

The Defendant also moves the Court to dismiss the Indictment in this case based upon the violation of his of due process rights under the Fifth and Fourteenth Amendments to the United States Constitution resulting from the Government's alleged vindictive prosecution. [Doc. 13].

"[A] prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." <u>United States v. Wilson</u>, 262 F.3d 305, 314 (4th Cir. 2001) (citing <u>United States v. Goodwin</u>, 457 U.S. 368, 372 (1982)); <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the

most basic sort, and for an agent of the [United States] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'") (internal citations omitted).  To establish a vindictive prosecution, "a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." Wilson, 262 F.3d at 314.  The charges must be "brought solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion."  Goodwin, 457 U.S. at 380 n.12.

"If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed."  Wilson, 262 F.3d at 314.  To invoke that presumption, a defendant must establish that the circumstances "pose a realistic likelihood of 'vindictiveness.'"  Blackledge v. Perry, 417 U.S. 21, 27 (1974).  A presumption of vindictiveness "is warranted only when circumstances warrant it for all cases of the type presented" and that "it will rarely, if ever, be applied to prosecutors' pretrial decisions."  Wilson, 262 F.3d at 315.  In the event that a defendant does establish a presumption of vindictiveness, the Government can overcome that presumption by presenting objective evidence justifying its conduct.  Id.

Here, the Defendant contends that the circumstances underlying his prosecution give rise to a presumption of vindictiveness.[5]  In arguing that the presumption should apply, the Defendant relies primarily on United States v. LaDeau, 734 F.3d 561 (6th Cir. 2013).  Although that case is similar insofar as that case relates to the Government's charging decisions following an adverse suppression ruling, the case is otherwise readily distinguishable.  In LaDeau, following an adverse suppression ruling, the Government superseded a possession of child pornography charge and replaced it with a charge for conspiracy to receive child pornography stemming from the same factual incident.  Id. at 564.  The new receipt charge was neither a different matter nor the result of newly obtained evidence; rather, it was a charge that the Government possessed the evidence to bring all along.  The court ultimately decided that the Government lacked good reason for failing to bring the charge earlier, and therefore, applied a presumption of vindictiveness.  Id. at 571.

Here, the Defendant was charged with aggravated reentry following the Court's resolution of the suppression motion in his firearms case.  This new charge was based on evidence that the Government only recently

---

[5] The Defendant has not presented any evidence of actual vindictiveness by the prosecutor, and no such evidence is ascertainable on the record.

discovered regarding the Defendant's immigration status. Further, the charge of aggravated reentry relates to a different sort of conduct than the type charged in the original Bill of Indictment (namely, possession of firearms by an illegal alien). Accordingly, the Court finds that a presumption of vindictiveness is not warranted under the circumstances.

Even if the Court were to find that the Defendant had satisfied his burden of showing that the presumption should apply, and the burden therefore shifted to the Government to present objective evidence justifying its conduct, the Court is mindful that such evidence must be viewed in the context of the "presumption of regularity." See United States v. Cooper, 617 F. App'x 249, 250 (4th Cir. 2015) (unpublished) (quoting United States v. Armstrong, 517 U.S. 456, 464 (1996)). "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file … generally rests entirely in his discretion." Armstrong, 517 U.S. at 464 (citation and internal quotation marks omitted). Such is the case here. With the search of ICE records performed by SA Zaffark in June 2019, and the receipt of the A-file on August 2, 2019, the Government had probable cause to believe that the Defendant had committed the offense of aggravated reentry. The decision to prosecute the Defendant for that offense

was a matter entirely within the discretion of the prosecutor. Accordingly, the Court finds that the Government has presented objective evidence justifying the timing of its charge against the Defendant.

For all these reasons, the Defendant's motion to dismiss based on due process violations is denied.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss Indictment for Violations of His Fifth and Sixth Amendment Rights to a Speedy Trial [Doc. 9] and the Defendant's Motion to Dismiss Based on Due Process Violations [Doc. 13] are **DENIED**.

**IT IS SO ORDERED.**

Signed: December 20, 2019

Martin Reidinger
United States District Judge